IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:19-cv-327

| | |
|---|---|
| MANUEL TORRES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TRACY LYNN CARTER, in his )<br>official capacity as Lee County )<br>Sheriff; TOWN OF APEX, NORTH )<br>CAROLINA; TOWN OF SILER )<br>CITY, NORTH CAROLINA; and )<br>NIGHTHAWK COMPANY )<br>POLICE, LLC, )<br>)<br>Defendants. ) | **FIRST AMENDED<br>COMPLAINT** |

Plaintiff Manuel Torres, complaining of Defendants Tracy Lynn Carter in his official capacity as Lee County Sheriff; Town of Siler City, North Carolina; Town of Apex, North Carolina; and NightHawk Company Police, LLC, does hereby state and allege the following:

## ACTION

1. Plaintiff, Manuel A. Torres ("Plaintiff" or "Torres"), a law enforcement officer employed by the Lee County Sheriff Office from October 2012 until his September 11, 2017, termination, institutes this action to address religious-based discrimination and retaliation committed by Defendants Tracy Lynn Carter in his

official capacity as Lee County Sheriff ("Sheriff Carter" or "LCSO"), the Town of Siler City, North Carolina ("Siler City"), the Town of Apex, North Carolina ("Apex"), and NightHawk Company Police, LLC ("NightHawk"), against Plaintiff as a result of his request for a religious accommodation from his employer from a job duty that violated his sincerely held religious beliefs and in retaliation for his religious accommodation requests and his filing charges of discrimination pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff seeks equitable and monetary relief in the form of present and future lost wages and benefits, compensatory damages for emotional distress and other injuries, and punitive and/or liquidated damages, as provided by law.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343. Plaintiff's state law claim is properly before this Court pursuant to 28 U.S.C. § 1367(a) because that state law claim is so related to the claims in the action that are within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Each Defendant is an entity capable of being sued under both federal and North Carolina law, and each further enjoys no immunity from the claims alleged in this First Amended Complaint.

3. Venue is properly laid in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(1), (b)(2), and (c), because it is a judicial district in which a defendant resides as well as a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

4. Plaintiff Torres, is and was at all times pertinent to this action, a citizen of the United States and a resident of Sanford, Lee County, North Carolina. At all times pertinent to this action, Plaintiff was an "employee" of LCSO or an applicant for employment with Defendant Siler City, Defendant Apex, and Defendant NightHawk within the meaning of 42 U.S.C. § 2000e(f). At all times pertinent to this action, Plaintiff was qualified for the positions he held and applied for.

5. Defendant Sheriff Tracy Lynn Carter holds the elected office of Sheriff for Lee County, North Carolina, pursuant to N.C. Gen. Stat. Chapter 162, with all the duties and responsibilities established in N.C. Gen Stat. Chapter 162, Article 3, including the hiring and dismissal of deputies and other employees that help perform his official duties in accordance with N.C. Gen. Stat. § 162-24. At all times relevant to this action, defendant Sheriff Carter was an "employer" within the meaning and definition of 42 U.S.C. § 2000e(b).

6. Defendant Siler City is a municipal corporation established pursuant to N.C. Gen. Stat. § 160A-1, *et seq.*, as defined and described in N.C. Gen. Stat. §160A-

1(2). In the exercise of its statutory powers, Defendant Siler City has established and operates Siler City Police Department as a department of the municipal government. At all times relevant to this action, Siler City acted through its managers and policymakers, including its Chief of Police and City Manager, and the acts, edicts, and practices of these persons represent the official policies of Defendant Siler City. At all times relevant to this action, Defendant Siler City was an "employer" within the meaning and definition of 42 U.S.C. § 2000e(b).

7. Defendant Apex is a municipal corporation, established and existing pursuant to Chapter 160A of the North Carolina General Statutes, as defined and described in N.C. Gen. Stat. § 160A-1(2). In the exercise of its statutory powers, Apex has established and operates the Apex Police Department ("APD") as a department of the municipal government. At all times relevant to this action, Apex acted through its managers and policymakers, including its administrative chief of police, town manager, and members of its town board; and the acts, edicts, and practices of these persons represent the official policies of Defendant Apex. At all times relevant to this action, Defendant Apex was an "employer" within the meaning and definition of 42 U.S.C. § 2000e(b).

8. Defendant NightHawk is a limited liability company organized and existing under the laws of the State of North Carolina at its principal place of business at 3901 Barrett Drive, Suite 100, Raleigh, North Carolina. At all times

relevant to this action, Defendant Apex was an "employer" within the meaning and definition of 42 U.S.C. § 2000e(b).

## ADMINISTRATIVE PROCEDURES

9. On or about November 9, 2017, Torres filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in its Raleigh Area Office in Raleigh, North Carolina. The plaintiff's EEOC Charge No. 433-2018-00419 alleged that the LCSO had engaged in unlawful religious discrimination and retaliation against him in the denial of his requests for religious accommodations.

10. On April 29, 2019, the EEOC issued its Notice of Right to Sue concerning Plaintiff's EEOC Charge No. 433-2018-00419, which Plaintiff received thereafter.

11. On or about July 16, 2018, Torres filed a Charge of Discrimination with the EEOC in its Raleigh Area Office in Raleigh, North Carolina. The plaintiff's EEOC Charge No. 433-2018-02466 alleged that Defendant Siler City had engaged in unlawful religious discrimination, national origin discrimination, age discrimination, and retaliation against him.

12. On April 29, 2019, the EEOC issued its Notice of Right to Sue concerning Plaintiff's EEOC Charge No. 433-2018-02466, which Plaintiff received thereafter.

13. On or about July 23, 2018, Torres filed a Charge of Discrimination with the EEOC in its Raleigh Area Office in Raleigh, North Carolina. Plaintiff's EEOC Charge No. 433-2018-02999 alleged that the Defendant LCSO had engaged in unlawful retaliation against him for his participation in an activity protected by Title VII.

14. On April 29, 2019, the EEOC issued its Notice of Right to Sue concerning Plaintiff's EEOC Charge No. 433-2018-02999, which Plaintiff received thereafter.

15. On or about July 23, 2018, Torres filed a Charge of Discrimination with the EEOC in its Raleigh Area Office in Raleigh, North Carolina. Plaintiff's EEOC Charge No. 433-2018-03011 alleged that the Town of Apex Police Department had retaliated against him for his filing his original charges against Defendant LCSO.

16. On April 29, 2019, the EEOC issued its Notice or Right to Sue concerning Plaintiff's EEOC Charge No. 433-2018-003011, which Plaintiff received thereafter.

17. On or about July 23, 2018, Torres filed a Charge of Discrimination with the EEOC in its Raleigh Area Office in Raleigh, North Carolina. Plaintiff's EEOC Charge No. 433-2018-03012 alleged that NightHawk had retaliated against him for his filing his original charges against the LCSO.

18. On August 29, 2019, EEOC issued its Dismissal and Notice of Suit Rights concerning Plaintiff's EEOC Charge No. 433-2018-003012, which Plaintiff received thereafter.

19. Plaintiff has exhausted all his administrative remedies prior to bringing this action and this First Amended Complaint has been timely filed with this Court.

20. Plaintiff has complied with all conditions precedent prior to bringing this action.

## FACTUAL ALLEGATIONS

21. Plaintiff Manuel A. Torres is a 51-year-old Hispanic male.

22. Torres has been certified as a sworn law enforcement officer by the State of North Carolina, pursuant to N.C. Gen. Stat. § 17C-2, since 2010.

23. Torres holds to Christian religious beliefs and regularly attends and serves as a deacon at East Sanford Baptist Church in Sanford, North Carolina.

24. Torres holds the strong and sincere religious belief that the Holy Bible prohibits him, as a married man, from being alone for extended periods with a female who is not his wife.

### Defendant LCSO (EEOC Charge Nos. 433-2018-00419 and -02999)

25. Plaintiff began his employment with Defendant LCSO in October 2012 and most recently held the position of County Deputy (Corporal) until on or around September 11, 2017.

26. During the course of his employment with the LCSO, Plaintiff was ordered to train a female deputy, which would include the requirement that he spend significant periods of time alone in his patrol car with the female officer trainee.

27. The job duty of training female deputies, in such a manner, violates Plaintiff's religious beliefs against being alone for periods of time with female(s) who is/are not his wife and leaving the appearance of sinful conduct on his part.

28. On or around July 19, 2017, Torres verbally requested of Sgt. Oldham a religious accommodation from his assigned job duty of training a female deputy alone.

29. Through the next few weeks, Sgt. Oldham alternately granted and denied Deputy Torres's accommodation requests.

30. Deputy Torres discussed Sgt. Oldham's denial of his reasonable accommodation request with his superiors, Lt. Smith and Capt. Estes, who each assured Deputy Torres that he would take care of it.

31. Because Deputy Torres took his request for religious accommodation up the established chain of command, Sgt. Oldham failed to respond Torres's call for backup during Torres's covering a multi-vehicle accident in an unsafe area in which Torres had to tase two fighting suspects, and a gun was present on the scene. An officer from a neighboring jurisdiction finally offered backup for Torres when the LCSO refused or neglected to do so for almost a half hour.

32. On September 6, 2017, Chief Butler, one of Torres's superior officers, talked to Deputy Torres about his religious accommodation request and expressed his anger over Torres's religious accommodation requests and his religious beliefs against being alone with a female who was not his wife.

33. On or about September 11, 2017, and without an explanation, Chief Butler informed Plaintiff that his services were no longer needed by LCSO, thus terminating his employment.

34. Torres filed charges of religious discrimination and retaliation against Defendant LCSO on November 9, 2017.

35. Since the date Plaintiff requested a religious accommodation and filed his EEOC charges of discrimination and retaliation against LCSO, LCSO has provided false and negative referrals to prospective employers, Defendants Siler City, Apex, and NightHawk.

36. On July 23, 2018, Plaintiff filed a second EEOC Charge of Discrimination (433-2018-02999) against Defendant LSCO based on its retaliation against Plaintiff by informing Defendants Siler City, Apex, and NightHawk of Plaintiff's engaging in the protected activities of requesting a religious accommodation and filing EEOC charges.

### Defendant Siler City (EEOC Charge No. 433-2018-02466)

37. On September 22, 2017, Deputy Torres was interviewed by three individuals for the position of Patrolman with the Siler City Police Department.

38. When asked by the interviewers why he had been dismissed from the LCSO, Torres explained to Siler City interviewers that he had requested from LCSO a religious accommodation not to be alone with female deputies in violation of his sincere religious beliefs, that the accommodation had been granted and revoked, and that, after he had complained about the denial of the accommodation, he was terminated with the sole explanation that his services were no longer needed.

39. Two of the interviewers indicated to Torres that Siler City would not have a problem granting the accommodation.

40. Siler City conditionally offered Torres the patrolman position pending his background check.

41. Between October 2017 and January 2018 Deputy Torres completed physical, TB test, pre-hire requirements, was given and qualified on his duty weapon, received several boxes of ammunition, and completed his background check.

42. On, January 30, 2018, after Plaintiff filed his first EEOC Charges against LCSO, Siler City rescinded the already extended job offer because of

information about Plaintiff's requests for religious accommodation and discrimination charges relayed to Defendant Siler City by Defendant LCSO.

43. Defendant Siler City then hired a patrolman, a white male under the age of 40.

**Defendant Town of Apex (EEOC Charge No. 433-2018-03011)**

44. On October 25, 2017, Plaintiff interviewed with the Town of Apex Police Department for the position of Police Officer.

45. Plaintiff successfully completed his background investigation and personal references.

46. Plaintiff passed the required polygraph.

47. APD Officer English met with Defendant LCSO at which time, upon information and belief, LCSO gave Officer English false information about Plaintiff's job performance at the LCSO.

48. In addition, Defendant LCSO gave Officer English information about Plaintiff's requests for a religious accommodation under Title VII and about information contained in a letter Plaintiff wrote to Sheriff Carter regarding Plaintiff's religious accommodation requests.

49. After Defendant Apex learned of, and because of, Plaintiff's religious accommodation requests to LCSO, Apex never responded to Plaintiff's telephone call or email request about the job position.

**Defendant NightHawk (EEOC Charge No. 433-2018-03012)**

50. On July 2, 2018, Plaintiff interviewed with the Hiring Manager of Defendant NightHawk for a NightHawk private police officer position.

51. When Defendant NightHawk's Hiring Manager asked Plaintiff why he was no longer employed by Defendant LCSO, Plaintiff replied that he had requested a religious accommodation from Defendant LCSO and that LCSO had thereafter terminated him.

52. When asked if Plaintiff had any legal actions pending against LCSO, Plaintiff informed Defendant NightHawk's Hiring Manager that Plaintiff had filed an employment discrimination complaint with EEOC against LSCO.

53. Defendant NightHawk then informed Plaintiff that NightHawk policy prohibited the company from hiring anyone with pending litigation, but that he would hire Plaintiff as soon as his charges against LSCO were resolved.

**COUNT I:**
**Title VII Claim for Religious Discrimination**
**(Against Defendant LCSO)**

54. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

55. Plaintiff has a sincerely held religious belief against working alone in his patrol car in isolated areas with a female who is not his wife.

56. LCSO's job requirement that Plaintiff train and be alone for significant periods with a female deputy violates Plaintiff's sincerely held religious belief.

57. Plaintiff repeatedly informed Sgt. Oldham, Lt. Smith, and Capt. Estes of his religious belief and asked those supervisors and superiors for a religious accommodation of the belief with regard the job duty of training and being alone with female deputies in violation of his religious beliefs.

58. Defendant LCSO did grant the accommodation request on several of Plaintiff's work days, but then, without demonstrating any reason for doing so, revoked the accommodation.

59. LCSO ultimately refused to accommodate Plaintiff's reasonable request for religious accommodation and continued to mandate his training a female deputy alone in violation of his sincerely held religious beliefs.

60. Defendant LSCO fired Plaintiff because of his religious beliefs and because he continued to request a reasonable religious accommodation from a job duty that violated his sincerely held religious beliefs.

61. As a proximate result of Defendant LCSO's violations of Plaintiff's civil rights, Plaintiff has suffered damages, including loss of income and benefits; loss of quality and enjoyment of life; loss of reputation; and other damages to be proven at trial. Plaintiff is entitled to recover his compensatory damages pursuant to 42 U.S.C. §§ 1981a and 2000e-5.

## COUNT II:
## Retaliation Under Title VII
## (Against All Defendants)

62. Plaintiff hereby incorporates the paragraphs 1 through 53 as if fully set forth herein.

63. Plaintiff repeatedly requested of Defendant LCSO a religious accommodation from being required to train and ride alone with a female deputy in violation of his religious beliefs.

64. When Plaintiff continued to request a reasonable religious accommodation from this mandatory job duty, following the LSCO chain of command for making his accommodation requests, Defendant LSCO fired him.

65. Defendant LSCO fired Plaintiff because he continued to request a religious accommodation from a job duty that violated his sincerely held religious beliefs and complained about religious discrimination.

66. After Defendant LSCO fired Plaintiff, Plaintiff filed religious discrimination and retaliation charges with the EEOC.

67. After Plaintiff told Defendant Siler City that LCSO terminated him because of his religious accommodation requests, Siler City extended to Plaintiff a position as patrolman.

68. During the period Plaintiff was completing the job and background check requirements for the job that Siler City had offered him, Plaintiff filed his Title

VII discrimination and retaliation charge 433-2018-00419 against LCSO with the EEOC.

69. Once Defendant Siler City learned that Plaintiff had filed discrimination and retaliation charges against LCSO, Defendant Siler City told Plaintiff his job offer had been rescinded.

70. Plaintiff also applied for a law enforcement position with Defendant Apex's Police Department.

71. After Plaintiff applied for a position with Defendant Apex and had successfully completed the required background check and lie detector test, an APD employee then met privately with an LCSO employee who relayed to Defendant Apex Plaintiff's requests for religious accommodation and EEOC charges.

72. Defendant Apex never responded to Plaintiff's employment application, despite his being qualified for the position applied for, because Defendant Apex had been informed by Defendant LSCO that Plaintiff had exercised his rights to request a religious accommodation and file EEOC discrimination charges.

73. Plaintiff applied for a private police officer position with Defendant NightHawk.

74. Once Defendant NightHawk learned that Plaintiff had filed religious discrimination and retaliation charges against LCSO, Defendant NightHawk

15
Case 5:19-cv-00327-FL   Document 30   Filed 12/17/19   Page 15 of 20

informed Plaintiff that it would not hire him while his Title VII religious discrimination and retaliation charges against LCSO were still unresolved.

75. As a proximate result of the violations of Plaintiff's civil rights by Defendants LCSO, Siler City, Apex, and NightHawk, Plaintiff has suffered damages, including loss of income and benefits; loss of quality and enjoyment of life; loss of reputation; and other damages to be proven at trial. Plaintiff is entitled to recover his compensatory damages pursuant to 42 U.S.C. §§ 1981a and 2000e-5.

### COUNT III:
### Termination in Violation of North Carolina Public Policy
### (Against Defendant LCSO)

76. Plaintiff hereby incorporates paragraphs 1 through 53 as if fully set forth herein.

77. It is the public policy of the State of North Carolina that all persons shall be able to seek, obtain, and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age, sex, or handicap by employers which regularly employ 15 or more employees.

78. Defendant LSCO regularly employs more than 15 employees, is an employer within the meaning of N.C. Gen. Stat. § 143-422.2 *et seq.*, and enjoys no lawful immunity from suit for violation of the protections expressed in this Act.

79. Plaintiff's religion is a protected category within the meaning of N.C. Gen. Stat. § 143-422.2.

80. In contravention of the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143.422.2, and North Carolina common Law, Defendant LCSO terminated Plaintiff's employment on account of his religion.

81. Plaintiff is therefore entitled to compensatory damages and other appropriate relief provided by North Carolina law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby respectfully requests this Court to:

1. Declare that the termination and other adverse actions against Plaintiff by Defendants were in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et seq*.) and also (as to Defendant LCSO) state law;

2. Reinstate Plaintiff to his respective position with the Defendant LCSO;

3. Order Defendants, jointly and severally, to make Plaintiff whole by providing him with equitable and compensatory damages in an amount in excess of Three Hundred Thousand Dollars ($300,000.00) for the loss of past, present, and future lost wages and other benefits, as well as for his emotional distress, anxiety, loss of reputation, and humiliation caused by the acts of Defendants;

4. Order Defendants to pay to the Plaintiff punitive damages as provided by federal law in amounts to be provided at trial exceeding Fifteen Thousand Dollars ($15,000.00);

5. Order Defendants to pay to Plaintiff pre-judgment and post-judgment interest on all amounts recovered herein;

6. Award Plaintiff the costs of this action, including reasonable attorneys' fees for their representation herein as provided in § 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), and any other applicable law;

7. Grant declaratory and injunctive relief, as provided by law; and

8. Grant such additional and further relief to the Plaintiff as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable presented herein.

Dated: December 27, 2019.     Respectfully submitted,

LAW OFFICE OF B. TYLER BROOKS, PLLC

BY: /s/ B. Tyler Brooks
B. Tyler Brooks
N.C. Bar No. 37604
4050 Yellowfield Way
Cary, North Carolina 27518

Telephone: (336) 707-8855
Fax: (919) 584-8373
btb@btylerbrookslawyer.com

GIBBS & ASSOCIATES LAW FIRM, LLC

BY: /s/ Jonathan D. Gibbs
Jonathan D. Gibbs*
Ohio Bar No. 0094455
6398 Thornberry Ct.
Mason, Ohio 45040
Telephone: (513) 234-5545
Fax: (888) 500-4638
jgibbs@gibbs-lawfirm.com
*Appearing pursuant to Local Rule 83.1

**CERTIFICATE OF SERVICE**

The undersigned certifies that on December 17, 2019, the First Amended Complaint was electronically filed with the Clerk of the Court, using the Court's CM/ECF electronic service system, which will send notification of such filing as follows:

Paul S. Holscher
Janean B. Dunn
Jackson Lewis P.C.
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Paul.Holscher@jacksonlewis.com
Janean.Dunn@jacksonlewis.com
*Attorneys for Defendant Town of Apex*

Katie Weaver Hartzog
Katherine Barber-Jones
Hartzog Law Group, LLP
1903 N. Harrison Avenue, Suite 200
Cary, NC 27513
khartzog@hartzoglawgroup.com

kbarber-jones@hartzoglawgroup.com
*Attorneys for Defendant Town of Siler City*

Bradley O. Wood
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Brad.Wood@wbd-us.com
*Attorney for Defendant Tracy Lynn Carter*

GIBBS & ASSOCIATES LAW FIRM, LLC

BY: /s/ Jonathan D. Gibbs
Jonathan D. Gibbs*
Ohio Bar No. 0094455
6398 Thornberry Ct.
Mason, Ohio 45040
Telephone: (513) 234-5545
Fax: (888) 500-4638
jgibbs@gibbs-lawfirm.com
*\*Appearing pursuant to Local Rule 83.1*