IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:19-CV-327-FL

| | | |
|---|---|---|
| MANUEL TORRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TRACY LYNN CARTER, in his official | ) | |
| Capacity as Lee County Sheriff; TOWN | ) | |
| OF SILER CITY, NORTH CAROLINA; | ) | |
| TOWN OF APEX, NORTH | ) | |
| CAROLINA; and NIGHTHAWK | ) | |
| COMPANY POLICE, LLC, | ) | |
| | ) | |
| Defendants. | | |

This matter is before the court on motion by defendant Nighthawk Company Police, LLC, ("Nighthawk") for attorneys' fees (DE 59). Plaintiff responded in opposition. In this posture, the issues raised are ripe for ruling. For the following reasons, the motion is granted in part and denied in part.

### STATEMENT OF THE CASE

The court summarizes as follows the background of the case as pertinent to the instant motion. Plaintiff commenced this Title VII employment discrimination and retaliation action, on July 31, 2019, against his former employer, defendant Tracy Lynn Carter in his official capacity as Lee County Sheriff ("LCSO"), and against two entities to which plaintiff submitted an application for employment as a law enforcement officer, defendants Town of Siler City, North Carolina ("Siler City"), and Town of Apex, North Carolina ("Apex").

Case management order entered November 4, 2019, providing for a May 15, 2020, discovery deadline. Upon plaintiff's motion, the court allowed plaintiff to file an amended complaint on December 9, 2019.

Plaintiff filed the operative amended complaint on December 17, 2019, adding a claim for Title VII retaliation against defendant Nighthawk. In summary, as pertinent here, plaintiff alleged therein that defendant Nighthawk was a limited liability company with a principal place of business in Raleigh, North Carolina. At all times relevant to this action, defendant Nighthawk allegedly "was an 'employer' with the meaning and definition of 42 U.S.C. § 2000e(b)." (Am. Compl. (DE 30) ¶ 8).[1] According to plaintiff, he applied for a private police officer position with defendant Nighthawk, but defendant Nighthawk refused to hire him because he had a Title VII action pending against defendant LCSO. (See id. ¶ 74). Plaintiff sought declaratory relief, compensatory damages, punitive damages, and attorneys' fees, against defendant Nighthawk, jointly and severally with all defendants.

Defendant Nighthawk filed on March 18, 2020, an answer to the amended complaint, which denied plaintiff's material allegations and also asserted, inter alia, a defense based on the assertion that "[d]efendant Nighthawk, now and at all relevant times to the instant action, has had less than fifteen employees and, therefore, does not constitute an 'employer' within the definition of 42 U.S.C. § 2000e(b)." (Answer (DE 45) at 21).

Upon plaintiff's motion, noting no objection by defendants, the court on May 13, 2020, extended the deadline for discovery to August 13, 2020.

---

[1] There is a clear scrivener's error in the amended complaint in paragraph eight describing defendant NightHawk. In particular, plaintiff states "Defendant Apex was an 'employer' . . . " instead of stating defendant NightHawk was an employer. (Am. Compl. (DE 30) ¶ 8). In light of the context of this paragraph eight, and in light of the fact that defendant Apex was described in the preceding paragraph seven, it is reasonable to infer the allegation in paragraph eight pertains only to defendant NightHawk, and the court will treat it as stating such henceforth in this order.

On July 17, 2020, plaintiff moved to dismiss defendant Nighthawk pursuant to Federal Rule of Civil Procedure 21 or 41, noting that "[p]laintiff has confirmed during the course of written discovery that Nighthawk employs fewer than the requisite number of employees to state a claim under Title VII; more particularly, Nighthawk is not an employer as defined by 42 U.S.C. § 2000e(b)." (DE 48 at 1). Further, "[p]laintiff's counsel discussed this dismissal by telephone with Nighthawk's counsel on Monday, July 13, 2020, and counsel for Nighthawk requested Plaintiff's counsel to voluntarily dismiss his claim against Nighthawk because the employer did not meet the numerosity requirement of Title VII." (Id. at 2). Accordingly, plaintiff moved to dismiss with prejudice defendant Nighthawk.

On August 19, 2020, the court granted plaintiff's motion to dismiss with prejudice defendant Nighthawk. Defendant Nighthawk filed the instant motion for attorneys' fees, as corrected, on August 25, 2020, seeking a total of $14,780.00 in fees. In support of the motion, defendant relies upon an affidavit of its attorney, Catherine E. Lee ("Lee"), which attaches four exhibits: 1) correspondence to plaintiff's counsel dated March 18, 2020; 2) correspondence to plaintiff's counsel dated April 3, 2020; 3) discovery responses sent to plaintiff on May 15, 2020; and 4) billing records.[2]

Plaintiff responded in opposition to the instant motion on September 22, 2020, relying upon 1) plaintiff's Equal Employment Opportunity Commission ("EEOC") charge against defendant Nighthawk; 2) an EEOC dismissal and notice of rights letter regarding the same; and 3) a position statement by defendant Nighthawk.[3]

---

[2]  Defendant also attaches to its memorandum in support of the motion a copy of an unpublished Fourth Circuit opinion.

[3]  In the meantime, on September 15, 2020, the court received a report of mediator advising of settlement of the case, between plaintiff and remaining defendants. The clerk of court confirmed that the mediation was held after defendant Nighthawk was dismissed from the action and defendant Nighthawk was not involved in the mediation. Thereupon, the court dismissed the matter subject to the right of any party to file a motion to reopen should

3

## COURT'S DISCUSSION

Defendant Nighthawk seeks attorneys' fees under 42 U.S.C. § 2000e-5(k), which provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k). In considering the award of attorneys' fees to "a prevailing defendant" under this provision, "a district court may in its discretion award attorneys['] fees . . . upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation," or "that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 421–22 (1978). "In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Id. at 422-23.

> This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

Id. at 422.

Considering this standard, the United States Court of Appeals for the Fourth Circuit has observed that "awarding attorneys' fees to a prevailing defendant is a conservative tool, to be used

---

settlement not be consummated within 45 days. The court noted the instant motion for attorneys' fees remained pending and will be addressed by separate order and judgment solely on the issue of attorneys' fees. As directed by the court's order, plaintiff filed stipulations of dismissal as to the remaining defendants on September 23, 2020, and October 21, 2020.

4

sparingly in those cases in which the plaintiff presses a claim which he knew or should have known was groundless, frivolous, or unreasonable." E.E.O.C. v. Great Steaks, Inc., 667 F.3d 510, 517 (4th Cir. 2012) (quotations omitted). "District courts should award such fees sparingly." Glymph v. Spartanburg Gen. Hosp., 783 F.2d 476, 479 (4th Cir.1986). "There is neither a precise test to be used, nor a specific quantum of proof required, in determining whether a plaintiff's claim was unreasonable." E.E.O.C. v. Propak Logistics, Inc., 746 F.3d 145, 151 (4th Cir. 2014). "Instead, a decision whether attorneys' fees should be awarded to a prevailing defendant . . . is peculiarly within the province of the trial judge, who is on the scene and able to assess the oftentimes minute considerations which weigh in the initiation of a legal action." Id. (quotations omitted).

Defendant Nighthawk asserts that it should be awarded attorneys' fees as prevailing party for the time spent by counsel after April 1, 2020, because plaintiff allegedly was aware by that date that defendant never employed more than eight employees and was therefore not an employer under Title VII. In particular, defendant Nighthawk points to correspondence defendant's counsel sent to plaintiff on March 18, 2020, informing plaintiff that Nighthawk "never employed more than eight . . . employees during the time period relevant to this litigation," and that Nighthawk therefore is not an "employer" as defined under Title VII. (Lee Aff. (DE 60) ¶ 6; Ex. A (DE 60-1 at 7)). Defendant's counsel again informed plaintiff's counsel of this assertion by correspondence on April 3, 2020. (Id. Ex. B (DE 60-1 at 9)). Next, defendant Nighthawk served interrogatory responses on plaintiff on May 15, 2020, listing individuals employed by it, confirming that it employed only six people during the relevant time. (Id. Ex. C (DE 60-1 at 19)). Finally, counsel for defendant Nighthawk had a conference with counsel for plaintiff on July 13, 2020, reiterating defendant's position and requesting voluntary dismissal. (Id. Ex. D (DE 60-1 at

5

33); see also Pl's M. to Dismiss (DE 48) ¶ 7). Plaintiff did not respond to these communications except to file his motion for voluntary dismissal on July 17, 2020.

In opposition to the instant motion, plaintiff does not dispute that defendant is a prevailing party under the meaning of § 2000e-5(k). Instead, plaintiff argues that defendant Nighthawk has not demonstrated plaintiff's litigation position was ever "frivolous, unreasonable, or without foundation," or "that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co., 434 U.S. at 421–22. Plaintiff asserts that information available to him suggested that defendant met the criteria for an employer under Title VII, at least through the point plaintiff received verified discovery responses from defendant Nighthawk in May, 2020. Thus, he contends, an award of fees is improper. In the alternative, plaintiff suggests that, at most, an award of attorneys' fees should be limited to those incurred after verified discovery responses were received, and only for time spent related to litigation with defendant Nighthawk. For the following reasons, under the unique circumstances of this case, the court agrees in part, with plaintiff's alternative suggestion.

The record reflects that, from the time of the filing of amended complaint, on December 17, 2019, up through plaintiff's receipt of defendant Nighthawk's discovery responses on May 15, 2020, plaintiff's claim against defendant Nighthawk was not frivolous, unreasonable or without foundation. As an initial matter, the claim was not frivolous or unreasonable, because it was based on a well-established legal theory of Title VII retaliation, and on the factual allegation in the complaint that defendant Nighthawk met the statutory requirements as an "employer" under Title VII. (Am. Compl. (DE 30) ¶¶ 8, 50-53, 74).

In addition, plaintiff's claim and the "employer" allegations in support of it were not without foundation, because they were grounded in documentation produced during plaintiff's

6

EEOC charge process. In particular, plaintiff's EEOC charge against defendant Nighthawk included a claim of retaliation consistent with that asserted in the amended complaint. (Pl's Resp., Ex. 1 (DE 66-1 at 3)). A response by defendant to the EEOC charge does not mention a defense of employing less than the required number of employees. (Id. (DE 66-3 at 2)). Notably, the EEOC dismissal and notice of rights did not provide for dismissal on the basis that "[t]he Respondent employs less than the required number of employees or is not otherwise covered by the statutes," which is an available reason for dismissal expressly provided on the form. (Id. (DE 66-2 at 2)). Rather, it provided for dismissal on the basis that "the EEOC is unable to conclude that the information obtained establishes violations of the statutes," and "[t]his does not certify that the respondent is in compliance with the statutes." Id.

In light of this information, defendant Nighthawk's answer and correspondence by counsel asserting a defense, in themselves, did not render plaintiff's position unreasonable or without foundation. Plaintiff reasonably continued litigation against defendant Nighthawk up to the point that it received interrogatory responses by defendant, verifying in decisive terms admissible evidence in support of the defense. (See Lee Aff. Ex. C (DE 60-1 at 19)). Up to that point, without verified discovery, plaintiff still had reasonable grounds for continuing litigation. See Christiansburg Garment Co., 434 U.S. at 422 (noting "[d]ecisive facts may not emerge until discovery"); Fed. R. Civ. P. 34(b)(3) (requiring interrogatories to be answered "fully in writing under oath") 56(c)(1) (including "interrogatory answers" as materials in the record that may support the assertion of a fact). After that point, by contrast, plaintiff had no reasonable grounds for continuing litigation, and plaintiff points to no information to the contrary. After receiving decisive discovery, plaintiff did not respond to defendant Nighthawk or offer voluntarily to

7

dismiss, until prompted to do so by a conference with defendant's counsel. (See Lee Aff. Ex. D (DE 60-1 at 33); see also Pl's M. to Dismiss (DE 48) ¶ 7).

In sum, defendant is entitled to reasonable attorneys' fees as a prevailing party for the time period after May 15, 2020, when plaintiff lacked a reasonable basis for continuing the litigation. Time prior to that point is not compensable. The court's determination regarding the limitation of compensable time in this case is reinforced by the guidance in the case law that "awarding attorneys' fees to a prevailing defendant is a conservative tool, to be used sparingly." Great Steaks, Inc., 667 F.3d at 517 (quotations omitted). In addition, the court is mindful that a plaintiff should be assessed attorneys' fees for continuing litigation only when "the plaintiff continued to litigate after it clearly became" unreasonable or groundless to do so. Christiansburg Garment Co., 434 U.S. at 422 (emphasis added). Here, that clear demarcation point came after defendant Nighthawk served its discovery responses on plaintiff.

Of the total $14,780.00 that plaintiff claims in fees, $11,320.00 relates to the non-compensable time period up through May 15, 2020. (Lee Aff. Ex. D (DE 60-1 at 27-33)).[4] Only the remaining $3,460.00 relates to the compensable time period after May 15, 2020. (Lee Aff. Ex. D (DE 60-1 at 27-34)).[5] The court turns next to a determination of whether this claimed amount is reasonable.

---

[4] The time records for this period include an additional .7 hours by Bonnie M. Raddatz, and .2 hours by Deborah R. Nowell, which are not claimed by defendant Nighthawk in its motion. (Compare Lee Aff. Ex. D (DE 60-1 at 27 and 30) with Lee Aff. (DE 60-1) ¶ 13; and Def's Mot. (DE 59) at 1). Since this time is not claimed by defendant Nighthawk, the court does not include it in its analysis herein.

[5] The time records for this period include an additional 4.6 hours by Alan Grant Simpkins which are not claimed by defendant Nighthawk in its motion. (Compare Lee Aff. Ex. D (DE 60-1 at 33-34) with Lee Aff. (DE 60-1) ¶ 13; and Def's Mot. (DE 59) at 1). Since this time is not claimed by defendant Nighthawk, the court does not include it in its analysis herein, except to note, in the lodestar analysis herein, that defendant Nighthawk has voluntarily reduced the claimed amount by not including time billed by Alan Grant Simpkins.

In considering the amount of attorney's fees in the context of fee-shifting statutes, the Fourth Circuit has instructed district courts to determine a "lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying the Johnson/Barber factors when making its lodestar determination." Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008) (citing Barber v. Kimbrell's Inc., 577 F.2d 216, 226 (4th Cir.1978) and Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir.1974)). These factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 321 (quotations omitted). The district court need only discuss "those factors of the litany that are applicable to the present fee determination, and the district court is under no obligation to go through the inquiry of those factors that do not fit." In re A.H. Robins Co., Inc., 86 F.3d 364, 376 (4th Cir. 1996).

After calculating the lodestar figure, "the district court is in a position to adjust the award upward or downward in light of the relevant considerations identified in Johnson and elsewhere." Arnold v. Burger King Corp., 719 F.2d 63, 67 (4th Cir. 1983); see, e.g., McAfee v. Boczar, 738 F.3d 81, 89 (4th Cir. 2013) ("We have never ruled . . . that when certain Johnson factors have merged into the lodestar calculation, they are not to be otherwise considered to adjust the lodestar amount."). The court may "award[] some percentage of the remaining amount, depending on the degree of success" achieved. Grissom, 549 F.3d at 321. "[T]he trial court has broad discretion to reduce the fee award in light of mitigating factors, such as the difficulty of the case, the motivation

9

of the [party required to pay attorneys' fees], and the relative economic status of the litigants." Arnold, 719 F.2d at 68.

In this case, defendant Nighthawk provides detailed documentation supporting a lodestar figure of $3,460.00 for the compensable period of time. Lee is lead counsel of record for defendant, and has practiced law since 2006, in the areas of employment law and administrative law. Lee, as a partner, was assisted in the case by associate Christina D. Cress ("Cress") and paralegal Dena Brown ("Brown"). Lee's hourly rate is $300 per hour; Cress's rate is $250 per hour; and Brown's rate is $150 per hour. These hourly rates are consistent with the standard rates charged by litigation attorneys in the metropolitan areas of North Carolina, and with the rate actually charged to defendant. (Lee Aff. (DE 60-1) ¶¶ 12-14; e.g., Ex. D (DE 60-1 at 32)). Defendant Nighthawk details the time expended in this litigation against plaintiff after May 15, 2020, with descriptive itemized time records, demonstrating that the type of work billed was commensurate with the needs of the defense of the case during that time period. (Id. Ex. D (DE 60-1 at 30-34)).

In sum, $3,460.00 is an appropriate lodestar amount in this case. The court turns to considering potential reductions to this amount. As an initial matter, the court rejects plaintiff's suggestion that reasonable attorneys' fees should only be those incurred "for the issues between [plaintiff] and defendant Nighthawk." (Pl's Resp. (DE 66) at 8). Plaintiff appears to be suggesting a discounting of time entries that involve communication between defendants not referencing defendant Nighthawk's defense of plaintiff's claim against it. For example, Cress and Brown billed defendant Nighthawk for review of other defendants' discovery responses in May, June, and July, 2020. (Lee Aff. Ex. D (DE 60-1 at 31-33). Lee likewise billed defendant Nighthawk for .8 hours spent on "[c]onference call with counsel for co-Defendants re scheduling depositions and

discovery requests." (Id. at 33). So long as plaintiff was continuing his litigation against defendant Nighthawk, however, these activities by defendant Nighthawk's counsel were reasonably related to their defense in the matter. Therefore, a reduction for these entries is not warranted.

The court also rejects plaintiff's suggestion that the court should exclude entirely the amount of time spent working on the instant motion, comprising most of the time entries after July 17, 2020. "[T]ime spent defending entitlement to attorney's fees is properly compensable." Trimper v. City of Norfolk, Va., 58 F.3d 68, 77 (4th Cir. 1995). "[I]t is nevertheless within the district court's discretion to determine exactly what amount would compensate the party sufficiently for the time spent on the fees phase of a lawsuit." Id. In Trimper, the court noted, as an example, that "expenditure of over twenty percent of the claimed time on fee preparation was unreasonable in a case in which the time and labor were minimal, where the legal questions were not difficult, and where the case was not complex." Id.

Here, while the court does not exclude entirely the time spent on the instant motion, some reduction in this amount is warranted. Of the total $3,460.00 amount claimed for time after May 15, 2020, a significant portion of that, $1,100.00, is attributable to time spent by Lee on the instant motion. An award of over thirty percent of the lodestar amount attributable to the instant motion alone is unreasonable in a case in which the compensable time period at issue is brief, and where the instant motion itself is only partially successful. The need for a reduction, however, is tempered where defendant Nighthawk has already voluntarily omitted 4.6 hours of time spent by Alan Grant Simpkins on the instant motion. (See Lee Aff. Ex. D (DE 60-1 at 33-34). Accordingly, the court reduces the amount attributable to the instant motion by $400.00, from $1,100.00 to $700.00, so that compensable time spent on the instant motion represents approximately twenty percent of the total compensable time.

In sum, the court finds reasonable the amount of $3,060.00 for time spent after May 15, 2020, comprising attorneys' fees awardable in this case, under 42 U.S.C. § 2000e-5(k).

## CONCLUSION

Based on the foregoing, defendant Nighthawk's motion for attorneys' fees (DE 59) is GRANTED IN PART and DENIED IN PART, as set forth herein. The clerk is DIRECTED to enter judgment of attorneys' fees in favor of defendant Nighthawk in the amount of $3,060.00, pursuant to 42 U.S.C. § 2000e-5(k), and thereupon close this case.

SO ORDERED, this 18th day of February, 2021.

LOUISE W. FLANAGAN
United States District Judge